[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 8203-eg
This case presents an application for the termination of the parental rights of Jane C. and John S., who are the biological parents of the minor child Adrienne F. Her maternal grandparents and legal guardians[1], Barbara F. and Edward F., brought this application in the Probate Court pursuant to Connecticut General Statutes § 45a-717, et. seq.
The petition filed in the Probate Court is dated March 30, 2001 and alleges the following three statutory grounds for termination of Jane C.'s and John S's parental rights: (1) The child has been abandoned by the parents; (2) there is no ongoing parent-child relationship; and (3) the child has been found by the Probate Court to have been neglected or uncared for in a prior proceeding and the parents have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time. considering the age and needs of the child, such parent could assume a responsible position in the life of the child. General Statutes § 45a-717 (g)(A), (C) and (D).
The Department of Children and Families (DCF) conducted an investigation and provided a report to the Probate Court.[2]
Jane C. appeared through appointed counsel in the Probate Court proceeding. Upon her motion, the matter was transferred to this court on November 14, 2001. Initially, a hearing was scheduled in this court on December 10, 2001, but was continued at the request of the mother's counsel who represented in a letter to the clerk that her client "may be able to get to Connecticut sometime after the first of the year." The matter was continued to January 23, 2002 at which time the mother's counsel indicated that her client was no longer at the address at which she had previously made contact. A case status conference was held on January 29, 2002 and the matter scheduled for trial on March 11, 2002. On that date neither Jane C. nor her attorney appeared. . The matter was again continued for a default trial on April 10, 2002. At the time of trial, although represented by counsel and aware of the hearing, mother did not appear CT Page 8203-eh as she was incarcerated in California. Her counsel moved to withdraw her appearance. The motion was denied. Counsel then moved for a continuance. That motion was also denied.
The father, John S., has not appeared. He was given notice of the Probate Court proceeding on the grandparents' application for termination of parental rights by publication. Subsequent notices were mailed to him by the Probate Court. After the matter was transferred to this court, John S. was served by certified mail, restricted delivery at the same address to which the probate court notices of hearing were sent. The court finds John S. received and signed for that certified mailing on December 22, 2001 and he was served with notice of the hearing in this court scheduled for January 23, 2002. John S. failed to appear on that date. He has been defaulted.
The court finds there are no other proceedings pending in any other court affecting Adrienne's custody and the court has jurisdiction to determine this matter.
Having read the application for termination of parental rights, the probate court ordered social study and having heard the testimony of Barbara F. and Edward F. and considered their credibility, the court makes the following findings by clear and convincing evidence:
Jane C. is thirty-two years old and resides in California. She moved there in 1989. She has, in addition to Adrienne, two children, W, aged three, and A, aged four, both of whom are placed in foster care in California. At the time of the DCF investigation, Jane C. had made no effort to regain custody of W and A.
While living with her parents, Jane had a troubled medical history, requiring brain surgeries with resultant intellectual and psychological impairment. She has abused heroin since the age of sixteen. Jane C. has an extensive criminal record in California for prostitution, drug abuse and forgery. Although she claimed, at the time of her interview by DCF to have been clean from drugs for over five years, she admitted that her three year old was born with narcotics in his system. CT Page 8203-ei
She was arrested in April of 2001 for grand theft and at the time of her interview by DCF, she was residing in a restitution house, set up through a Los Angeles correctional facility. Her parole was to end in January 2002. She was rearrested in February of 2002. At the time of trial on April 10, 2002, her counsel indicated that she was still incarcerated but anticipated release shortly.
Jane C. has never requested assistance with transportation to enable her to see Adrienne either in California or in Connecticut and has indicated no concrete plan or ability to care for Adrienne. She has sent occasional birthday or Christmas cards and letters. The petitioners who are Jane C.'s parents have provided her with a calling card to enable her to make telephone calls. She speaks to Adrienne for one to two minutes. She does not solicit information about Adrienne, but Barbara F. does volunteer information about Adrienne.
Barbara F. met John S. in California in 1992 before Adrienne's birth. She last spoke to him in May or June of 2001 when he telephoned her from Ventura California regarding the probate termination proceedings. John S. did not make himself available for the probate investigation and study. That he spoke with Barbara F. about the termination proceeding, evinces to the court that he had knowledge of the filing of the application pending in the Probate Court. He has never expressed any interest in those proceedings. these proceedings, or in Adrienne.
Adrienne was born on June 1993 in California where she resided with her mother for about 10 months. The petitioners gained temporary custody of her after she was brought to Connecticut from California. On October 19, 1995, the Probate Court removed Jane C. and John S. as guardians of Adrienne and appointed the maternal grandparents as her guardians. Adrienne has remained in their care and custody. She last saw her mother just before her second birthday. Adrienne does not remember her mother or being in her mother's care. Since Adrienne has been in Connecticut, John S. has had no contact with Adrienne, has made no contribution to her financial or CT Page 8203-ej emotional well being and has no relationship with her. He has never called or sent her any cards or gifts. Adrienne has no recollection of him.
Adrienne is almost nine years old and has lived with her maternal grandparents for most of her life. Adrienne calls her grandparents "mom" and "dad". She is well-mannered, sociable and does very well in school. She is anxious and concerned about the outcome of this proceeding as she wishes to remain with her grandparents. They wish to adopt her if her parents' rights to her are terminated. Adrienne has no recollection of Jane C. or John S. and no memories of feelings for them. Given the many years during which neither parent has shown interest, concern or affection for Adrienne and given her need for certainty and stability, it would be detrimental to her to prolong her anxiety and would likely be futile to afford these parents time to establish a relationship.
ADJUDICATION
The court has considered only the evidence of events preceding the filing of the petition. The court finds by clear and convincing evidence that the Jane C. and John S. have abandoned their child in that they have failed to maintain a reasonable degree of interest, concern or responsibility for her welfare.
The court finds by clear and convincing evidence that there is no ongoing parent/child relationship with respect to Jane C. and John S. that ordinarily develops as a result of a parent having met, on an ongoing day to day basis, the physical, emotional, moral, and educational need of the child, and to allow further time for the establishment of a parent/child relationship would be detrimental to the best interest of the child.
The court finds by clear and convincing evidence that Adrienne has been found in a previous adjudication to be neglected and that Jane C. and John S. have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. CT Page 8203-ek
DISPOSITION
Having found that the grounds exist for termination of parental rights, the court must now consider the appropriate disposition. Here, the focus is not on the parents directly, but on the best interests of Adrienne. The court may and has considered the evidentiary time-frame up to the present.
The following are the factual findings required by General Statutes § 45a-717 (h)
1) The timeliness, nature and extent of services offered, provided and made available to the parent and child by a child placing agency to facilitate the reunion of the parent with the child;
Since no such agency has been involved with this family, no such finding is required. Nonetheless, the court will find that Adrienne's grandparents and legal guardians have provided mother with the means to maintain telephone contact with the child on a regular basis, except for times when the mother has not chosen to call or when her manner has not been appropriate.
2) The terms of any applicable court order entered into and agreed upon by any individual or child placing agency and the parent and the extent to which all parties have fulfilled their obligations under such order;
There are no such court orders.
3) The feelings and emotional ties of the child with respect to the child's parents, any guardian of the child's person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties;
As previously noted, Adrienne calls her grandparents "mom" and "dad" and has been living with them since she was ten months old. Her mother left Connecticut just before Adrienne was two years old, and since that time Adrienne has known no other caregivers. She has no CT Page 8203-el recollection of either her biological mother or father. In 1995, the petitioners were appointed her legal guardians. She is strongly bonded to them, desires to remain with them. Adrienne has nightmares about her mother and is uncertain and anxious about her status as a result of these proceedings.
4) The age of the child;
Adrienne will be nine years old on June 2002.
5) The efforts the parent has made to adjust such parent's circumstances, conduct or conditions to make it in the best interests of the child to return the child to the parent's home in the foreseeable future including but not limited to (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
While Jane C,. has in the past maintained some contact with Adrienne by phone, months have elapsed without contact. Mother's cards and letters are sparse and sporadic, and she does not ask the guardians about her daughter, but receives information when they volunteer it. Her problems with the criminal justice system in California continue unabated. The court finds that the mother has been unsuccessful in making any meaningful attempt to adjust her circumstances, conduct or condition to facilitate reunification. She has made no reasonable attempt to have visits with Adrienne or to return to Connecticut since she left her child in the petitioners' in 1995. John S. who also lives in California has made no attempt to initiate or maintain contact with Adrienne and has made no attempt to adjust his circumstances, conduct or condition to facilitate reunification.
(6) The extent to which a parent has been prevented from maintaining a reasonable relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstance of the parent. CT Page 8203-em
Mother has not been in a position to regularly contribute financially to the care of her daughter. Given her ongoing criminal conduct and incarceration right up to the time of trial it is extremely unlikely that she will be able to contribute support for Adrienne in the foreseeable future. Further, the guardian grandparents have provided financial support for Jane C. to have telephonic contact with Adrienne and to facilitate an ongoing relationship with her. Their caring and concerned efforts have not been sufficient to overcome the consequences of Jane C.'s drug-addicted and law-breaking life style.
The court further finds that Adrienne needs the stability, consistency, and certainty that are provided by the loving relationship with her grandparents and the home they have maintained for her. They, unlike her biological parents, have contributed to her financial and emotional well-being. There is no evidence to conclude that either parent has any real or meaningful intent to undertake such a role.
Based upon the foregoing findings, the court determines by clear and convincing evidence that it is in Adrienne's best interest that a termination of parental rights enter with respect to her mother, Jane C., and her father, John S. Accordingly, a termination of their parental rights is ordered. It is further ordered that Barbara F. and Edward F. are appointed the guardians of Adrienne's person in accordance with Connecticut General Statutes 45a-717 (j). The guardians of Adrienne are ordered to report to the court within thirty days of the date judgment is entered on a plan and to make subsequent reports in accordance with state and federal law.
Lois Tanzer, Judge